IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CONTINENTAL INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:12-CV-0925-D |
| VS. | § § | |
| GIFFORD-HILL & COMPANY, INC., et al., | § § § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The instant motion to dismiss in this insurance coverage declaratory judgment action

presents the question whether the court should abstain under the *Brillhart* abstention

doctrine.[1]  The court concludes that it should abstain, and it stays the case.

I

Plaintiff The Continental Insurance Company ("Continental") seeks a declaratory

judgment that it has no duty to defend or indemnify its insureds Gifford-Hill & Company,

Inc. ("Gifford-Hill"), Amcord, Inc. ("Amcord"), Riverside Cement Company ("Riverside"),

Hanson Pipe & Precast, Inc. ("Hanson Pipe & Precast"), and Lehigh Hanson, Inc. (Lehigh

Hanson) (collectively, the "Insureds").[2]  The Insureds are defendants in 50 toxic tort lawsuits

pending in California superior court that allege injury from the release of toxins from cement

---

[1]*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

[2]Other parties have been terminated by stipulation or through amended complaints.

manufacturing facilities in California (the "Cement Dust Cases").

Continental insured the Insureds under liability insurance policies that covered relevant time periods for the Cement Dust Cases. Together with other insurers, Continental agreed to defend the Insureds, but it did so under reservations of rights, including the right to file a declaratory judgment action. The Insureds chose one company from the group of insurers to lead their defense—Central National Insurance Company of Omaha ("Central National"). As the lead carrier, Central National began reimbursing the Insureds for part of their defense costs, and it then sought contribution from the other insurers, including Continental, who agreed to contribute.

Central National has filed two suits in California superior court concerning obligations related to defending the Insureds. The first is against the Insureds, alleging that they are incurring excessive legal costs, and seeking to compel arbitration to determine the amount that Central National must reimburse the Insureds under California law. The second suit, against Central National's fellow insurers (including Continental), requests a declaratory judgment that "each [insurer] is obligated to defend [the Insureds] in the Cement Dust Cases and pay its equitable share of such costs." Ds. App. 53.

About one month before Central National filed suit in California, Continental filed the instant declaratory judgment action against the Insureds. The Insureds move the court to stay or dismiss this lawsuit based on *Brillhart* abstention in light of Central National's currently pending declaratory judgment action in California against Continental and the other insurers. Alternatively, the Insureds move to transfer venue. Continental opposes the motion.

II

Federal courts have broad discretion over whether to issue a declaratory judgment. *See, e.g., Evanston Ins. Co. v. Tonmar, L.P.*, 669 F.Supp.2d 725, 732 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Act "gives federal courts the competence to declare rights, but it does not impose a duty to do so." *Evanston Ins.*, 669 F.Supp.2d at 732 (citing *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam)). Although "the district court's discretion is broad, it is not unfettered." *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993). The court cannot dismiss a declaratory judgment action "'on the basis of whim or personal disinclination.'" *Id.* (quoting *Rowan Cos. v. Griffin*, 876 F.2d 26, 28-29 (5th Cir. 1989)).

In considering whether to abstain or decide a declaratory judgment action, the court must determine (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) how to exercise its broad discretion to decide or dismiss the action. *E.g., Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The parties focus their dispute on the third factor—abstention—but the court will address the first two. *See id.* (holding that, although no party challenged ripeness of declaratory judgment complaint, court had duty to consider objections to its jurisdiction *sua sponte*).

- 3 -

III

Justiciability in the declaratory judgment context is typically an issue of ripeness, i.e., whether an actual controversy exists. *Id.* at 895-96. "[A]n actual controversy exists where a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Id.* at 896 (citation, brackets, and internal quotation marks omitted).

The question whether Continental has a duty to defend presents an actual controversy and is justiciable. It presents an actual controversy because the Insureds are currently facing lawsuits. *See Northfield Ins. Co. v. Women & Children's Res. Ctr., Inc.*, 116 F.3d 476, 1997 WL 255661, at *1 (5th Cir. Apr. 15, 1997) (per curiam) (unpublished) ("A complaint requesting a declaration of an insurer's duty to defend a pending liability lawsuit presents a justiciable controversy." (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273-74 (1941))).

In contrast, the question whether Continental owes a duty to indemnify is not ripe until the underlying tort suits conclude.[3] The duty to indemnify is distinct from the duty to defend

---

[3]Texas recognizes a narrow exception where "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis omitted). The Supreme Court of Texas has since clarified that this exception from *Griffin* "'was grounded on the impossibility that the . . . case could be transformed by proof of any conceivable set of facts into [an occurrence] covered by the insurance policy.'" *Colony Ins. Co. v. Price*, 2013 WL 1155422, at *4 (N.D. Tex. Mar. 21, 2013) (Fitzwater, C.J.) (quoting *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 745 (Tex. 2009)). The narrow exception does not apply here. Continental's declaratory judgment action alleges that it has no duty to defend or indemnify the Insureds because the underlying toxic tort suits only allege non-sudden and non-accidental releases of pollution. *See* 4th Am. Compl. ¶ 38. Facts outside the pleadings could arise during the litigation that would establish accidental or

in that the duty to indemnify "is determined by the facts actually established in the underlying lawsuit." *Ewing Constr. Co. v. Amerisure Ins. Co.*, 684 F.3d 512, 521 (5th Cir. 2012) (citing *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.,* 300 S.W.3d 740, 744 (Tex. 2009)).[4]  Therefore, questions regarding indemnity coverage are "ordinarily not justiciable until after the underlying lawsuit is resolved because coverage may turn on facts that are proven, even if those facts were not pled." *Id.* (citing *D.R. Horton*, 300 S.W.3d at 745).

IV

The court next addresses whether it has authority to grant declaratory relief.  In a case where the court's subject matter jurisdiction is invoked based on diversity of citizenship, the court has authority to grant declaratory judgment when—as here—it has diversity jurisdiction.[5] *E.g., Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003) (holding that district court properly concluded that it had authority to decide declaratory

---

sudden release of contaminants and thus trigger coverage.

[4]The insurance policies at issue here lack choice-of-law clauses, and the parties dispute whether Texas or California law applies.  The parties have not adequately briefed the choice-of-law issue, and this court need not decide it to decide this motion.  Under California law, the issue of duty to indemnify likewise is not ripe at this time.  *See Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 108 (1996) (holding that duty to indemnify only becomes ripe once insured party has incurred liability in underlying action).

[5]Continental pleads complete diversity, and complete diversity of the parties' citizenship is undisputed.  Continental alleges that it is a Pennsylvania corporation with its principal place of business in Illinois; Gifford-Hill is a Delaware corporation with its principal place of business in Texas; Amcord is a Delaware corporation with its principal place of business in Texas; Riverside is a Delaware corporation with its principal place of business in Texas; Hanson Pipe & Precast is a Virginia corporation with its principal place of business in Texas; and Lehigh Hanson is a Delaware corporation with its principal place of business in Texas.  *See* 4th Am. Compl. ¶¶ 3-10.

judgment suit where there was diversity jurisdiction).[6]

V

The court now turns to the question whether, in its discretion, it should abstain from adjudicating Continental's declaratory judgment action.

A

When a district court considers abstaining from adjudicating a declaratory judgment action because of a pending parallel state court proceeding, it must "ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495. *Brillhart* abstention analysis involves three overarching considerations—federalism, fairness, and efficiency—and is guided by several nonexclusive factors. *See Sherwin-Williams*, 343 F.3d at 388, 390-92 (interpreting factors

---

[6]In *Sherwin-Williams* the panel also addressed whether the Anti-Injunction Act precluded the district court from granting declaratory relief. But in *Sherwin-Williams* the defendants against whom the declaratory judgment action was brought moved to dismiss based on the Act, and the panel held that the Anti-Injunction Act did not apply. *Sherwin-Williams*, 343 F.3d at 387-88. The panel also noted that, under the second *Orix* element, "a district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those involved in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under section 2283 [of the Anti-Injunction Act]." *Id.* at 388 n.1 (citing *Travelers Ins.*, 996 F.2d at 776). Mandatory abstention does not apply in the instant case, however, because the first factor is not met. Central National filed its state court action *after* Continental filed suit in this court. "The absence of any of the three factors defeats mandatory abstention[.]" *Smith v. McLean*, 2011 WL 2792387, at *5 (S.D. Tex. July 14, 2011) (quoting *Sealed v. Sealed*, 33 F.3d 1379, 1994 WL 487245, at *2 (5th Cir. Apr. 18, 1994) (unpublished)).

- 6 -

set out in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)).[7]

B

The court will address first the federalism and efficiency considerations of *Brillhart* abstention analysis.  Regarding this inquiry, the parties primarily dispute the extent of similarity between the federal and state proceedings.

1

The Court in *Brillhart* cautioned that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit

—————————————

[7]The nonexclusive factors listed in *Trejo* are

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
> (5) whether the federal court is a convenient forum for the parties and the witnesses;
> (6) whether retaining the lawsuit would serve the purposes of judicial economy;
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams*, 343 F.3d at 388 (quoting *Trejo*, 39 F.3d at 590-91).  These factors serve as a guide to the court's discretion rather than as an exhaustive checklist.  *See generally id.* at 394 (rejecting proposed *per se* rule of prohibiting abstention where there is no pending parallel state proceeding, because "a *per se* rule requiring a district court to hear a declaratory judgment action is inconsistent with the discretionary *Brillhart* and *Wilton* standard").

is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495.  Under the first *Trejo* factor, the court considers "whether there is a pending state action in which all of the matters in controversy may be fully litigated."  *Sherwin-Williams*, 343 F.3d at 388 (quoting *Trejo*, 39 F.3d at 590).  The degree of similarity between the federal and state proceedings implicates the considerations of federalism and efficiency.  Respect for federalism counsels a federal court to abstain "if the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending."  *Sherwin-Williams*, 343 F.3d at 390-91.  As for efficiency, the degree of similarity between the parties to each proceeding determines whether the litigation is duplicative.  "A federal court should be less inclined to hear a case if necessary parties are missing from the federal forum, because that leads to piecemeal litigation and duplication of effort in state and federal courts."  *Id.* at 391 (also noting that piecemeal litigation may raise federalism concerns because of potential for inconsistent state court and federal court judgments).

Brillhart* abstention does not require that the state and federal proceedings be exactly parallel—meaning "involving the same parties and the same issues."  *E.g., Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990).  Although a district court *can* abstain when a pending state court proceeding presents the same issues and same parties, *see Wilton*, 515 U.S. at 283 (citing *Brillhart*, 316 U.S. at 495), *Brillhart* abstention is not confined to occasions where the proceedings are exactly parallel.  When a pending state proceeding "is not 'parallel' because it does not involve all the same parties or

issues," the court should consider "the extent of similarity." *Sherwin-Williams*, 343 F.3d at 394 n.5. *Sherwin-Williams* cited the example of *Continental Casualty Co. v. Robsac Industries*, 947 F.2d 1367 (9th Cir. 1991), in which the Ninth Circuit concluded that abstention was proper despite the fact that non-diverse parties were not included in the federal court action. *See Sherwin-Williams*, 343 F.3d at 394 n.5 (citing *Robsac Indus.*, 947 F.2d at 1372-73). Similarly, this court has abstained despite the fact that additional parties had been joined in the federal proceeding. *See Leslie v. Tex. Collegiate Baseball League, Ltd.*, 2008 WL 898935, at *2-3 (N.D. Tex. Apr. 3, 2008) (Fitzwater, C.J.). Following *Sherwin-Williams*, *Leslie* found it "not controlling" that the federal declaratory plaintiffs had joined additional parties. *Id.* at *3. This court reasoned that both lawsuits had derived from the same dispute and contained largely identical issues and parties. *Id.* at *2. Regarding the additional parties, there was no suggestion that they could not be joined in the state action, even if they were assumed to be necessary parties. *See id.* at *3.

2

Continental contends that the California court proceeding is not sufficiently similar because it will not adjudicate Continental's duty to defend the Insureds. It maintains that the California declaratory judgment action is based on the insurers' interim agreements to defend the Insureds—agreements in which the insurers reserved their rights to disclaim coverage. Continental thus argues that the California case is simply an equitable proceeding to allocate defense costs and will not interpret Continental's insurance policies to determine whether it owes a duty to defend the Insureds. The court disagrees.

Central National's complaint in the California suit expressly seeks a judgment declaring "[t]hat each [insurer] is *obligated to defend* [the Insureds] in the Cement Dust Cases and pay its equitable share of such costs either directly and/or by way of reimbursement to Central National." Ds. App. 53 (emphasis added); *see also id.* at 50 (alleging that "[e]ach [insurer] is obligated to pay its equitable share of [the Insureds'] defense costs").

Central National's complaint in the California case also reflects the necessary role that the insurers' policies will play in that litigation. Central National

> seeks a judicial declaration *setting forth the rights and obligations*, if any, including without limitation the proper allocation of equitable shares of defense and/or indemnity and adjustments . . . *under the insurance policies at issue* in connection with the Cement Dust Cases, and any and all other such factors as bear on this issue.

*Id.* at 51 (emphasis added); *see also id.* at 50 ("An actual controversy has arisen and now exists between and among Central National . . . and [the insurers] regarding the parties' rights, obligations and equitable share of defense and/or indemnity costs *under their respective insurance policies* in connection with the Cement Dust Cases." (emphasis added)). To support the assertion that the state proceeding will only decide allocation, Continental cites Central National's allegation that, "*to the extent* [Central National's] policies obligate it to provide a defense and/or indemnity to [the Insureds] in the Cement Dust Cases, the policies issued to [the Insureds] by [the insurers] contain substantially similar terms such that each also imposes a substantially similar or greater duty to defend and/or indemnify [the

Insureds]." *Id.* at 49-50 (emphasis added).   Continental thus maintains that the state proceeding will assume, without deciding, that the insurers owe a duty to defend.   But this contention gives insufficient weight to the complaint's express request for a judgment declaring that Continental owes a duty to defend.   And the cited language, when read in context, is properly understood as an introduction to Central National's declaratory judgment claim regarding the insurers' obligations under their insurance policies.

Continental also refers to the acknowledgment in the California complaint of the possibility that an insurer may in the interim separately obtain a judicial determination regarding coverage.   The complaint requests that the California court declare that—for those insurers like Continental that already agreed to contribute the amount Central National requested—"[t]o the extent Central National's estimate of equitable shares is less than any or all of the [insurers'] true equitable shares for any reason, *including without limitation a future determination that one or more of [the insurers'] policies do not cover the underlying claims* . . . [the other insurers] owe an adjustment with respect to defense costs[.]" *Id.* at 50. This language does not demonstrate that the California suit will not determine coverage.   In fact, the complaint states that its requested "judicial determination is necessary and appropriate at this time so the parties may ascertain their present and/or future rights and obligations, if any, and so as to avoid the multiplicity of legal actions that would otherwise be necessary." *Id.* at 51.   In sum, the court concludes that the California proceeding will address the same legal issue as the instant declaratory judgment action: whether Continental owes a duty to defend the Insureds.

3

Although the California suit will address the legal issue in dispute in the instant case, the parties are not identical.  No other insurers are joined in this lawsuit, and the Insureds are not currently parties to the California suit.  The Insureds state that they have not joined the California suit because Central National basically is serving as their "surrogate."  *See* Ds. Reply Br. 4.  The Insureds chose Central National as their lead carrier to defend them in the Cement Dust Cases instead of seeking a direct defense from each insurer.  Thus Central National, not the Insureds, bears the responsibility of seeking contribution from the other insurers.  In that role, Central National sued the other insurers seeking a declaratory judgment and contribution.[8]  In these circumstances, although the Insureds are absent from the California suit, this does not render the proceedings dissimilar because the state proceeding will still determine Continental's duty to defend the Insureds.

Continental posits that the proceedings are not sufficiently similar because the California case is not binding on the Insureds as non-parties.  While this fact is worthy of consideration when exercising the discretion whether to abstain, it is not alone controlling.

---

[8]This circumstance of multiple insurers' allegedly bearing the duty to defend arises because, under California law, multiple insurers can be required to jointly cover an insured's liability.  Once a policy is triggered during an insurer's policy period, the insurer is responsible for the full extent of the insured's liability, "not just for the part of the damage that occurred during the policy period."  *Armstrong World Indus.*, 45 Cal. App. 4th at 105.  And "[w]here two or more insurers' policies potentially cover an insured's liability and one of them bears the defense burden alone, the insurer bearing that burden is entitled to equitable contribution from the non-defending carriers."  *Emp'rs Ins. Co. of Wausau v. Travelers Indem. Co.*, 141 Cal. App. 4th 398, 403 (2006).

Continental points to no authority holding that *Brillhart* abstention relies on a state court proceeding's being binding on all parties to the federal court action.   In fact, such a contention is answered implicitly by the case law holding that a court may abstain despite the fact that the state proceeding does not involve exactly the same parties.   *See Sherwin-Williams*, 343 F.3d at 394 n.5; *Leslie*, 2008 WL 898935, at *2 (explaining that state court proceeding need not involve "all the same parties or issues").   Furthermore, Continental does not suggest that the Insureds cannot be added to Central National's declaratory judgment action.   *Cf.* P. Br. 17 (averring, without support or explanation, that adding the Insureds to the state court suit would not be easy).

4

Relying again on the fact that the Insureds are not parties to the California suit and not bound by its result, Continental avers that, if this court abstains, Continental will be compelled to file a new declaratory judgment action against the Insureds in California. Continental does not explain, however, why the Insureds cannot be joined as parties to the California suit.   And the alternative to simply joining the Insureds as parties presents disadvantages when viewed in terms of efficiency and federalism.

The instant declaratory judgment action represents one aspect of Central National's action against multiple related insurers and a larger body of litigation in California.   The Cement Dust Cases are pending in California, as are both of Central National's actions.   If this court adjudicates Continental's declaratory judgment action, it will make decisions based on state law that could impact the principal litigation in California.   It is also possible—if not

likely—that the Insureds will seek to add other insurers as parties to this case, or that other insurers will move to intervene, shifting the focus of the critical insurance-related litigation (which presents state-law issues) to federal court.  On the other hand, if Central National and other insurers do not become parties to this case, this action may have no binding effect on the pending California litigation and therefore duplicate a case that will also address whether Continental owes the Insureds a duty to defend.  These practical considerations concerning federalism and efficiency demonstrate strongly that the controversy between the parties in the instant case can better be adjudicated in the California lawsuit.

5

Another efficiency consideration in *Brillhart* abstention analysis is the convenience of the federal forum for the parties and witnesses.  *See Evanston Ins.*, 669 F.Supp.2d at 733-34.  This forum is convenient for the Insureds because they have their principal places of business in Texas, Continental issued nine out of the ten relevant insurance policies in Texas, and it is unlikely that the parties will use witnesses from the Cement Dust Cases.[9]  But this

---

[9]Because this suit concerns insurance policy interpretation, if Texas law applied the eight-corners rule would limit consideration to the insurance policy and the underlying suits' petitions.  *See Ewing Constr. Co.*, 684 F.3d at 521 (citing *D.R. Horton*, 300 S.W.3d at 744). Even if California law applied, the parties would not likely use witnesses from California. California law limits extrinsic evidence in this context to issues of policy interpretation and any extrinsic facts known by the insurer regarding the underlying lawsuit that may have triggered the duty to defend.  *See Palp, Inc. v. Williamsburg Nat'l Ins. Co.*, 200 Cal. App. 4th 282, 289 (2011) (holding that, under California law, courts determine duty to defend by "comparing the allegations of the complaint with the terms of the policy and extrinsic facts known by the insurer at the inception of the third party lawsuit" (emphasis and internal citation and quotation marks omitted)).  Regarding these admissible topics for witness testimony, the Insureds do not mention that California witnesses would be needed.

- 14 -

relative convenience is diminished by the risk that this federal action in Texas may draw in all the other insurers and thus divert to Texas a critical component of what is largely a California-based dispute.

## C

The court next considers the fairness of abstaining.

## 1

When assessing the fairness factor, the court assesses whether the federal declaratory judgment action is an "improper and abusive" litigation practice that seeks to "us[e] the declaratory judgment process to gain access to a federal forum on improper or unfair grounds." *See Sherwin-Williams*, 343 F.3d at 391. Guiding this inquiry are *Trejo* factors two, three, and four: whether the declaratory plaintiff filed suit in anticipation of a lawsuit by the defendant; whether the plaintiff engaged in forum shopping in bringing the suit; and whether possible inequities exist in allowing the declaratory plaintiff to gain precedence in time or to change forums. *Id.* While these factors "cannot be literally applied" because it is not necessarily improper to sue in anticipation of a state suit or to choose the federal forum when the parties are diverse, *see id.* at 391-92, 398, such actions raise fairness concerns and evidence forum shopping if suing in the federal forum changes the applicable law.[10] *See id.* at 397 (citing *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir.

---

[10]Suing in federal court in a different state can change the applicable substantive law because a federal court applies the conflict of laws rules of the state in which it sits. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

1983) (affirming abstention where declaratory plaintiff sued in Texas federal court in anticipation of California state court action, and Texas conflict of laws rule changed applicable substantive law)); *see also AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 Fed. Appx. 316, 321 (5th Cir. 2006) (per curiam) (explaining that "a court is more likely to find a plaintiff engaged in impermissible forum shopping where the federal action would change the applicable law").

The Insureds maintain that Continental's decision to sue in Texas federal court evidences forum shopping. They posit that Continental filed for declaratory judgment here so that Texas law would apply. As evidence of forum shopping, they rely on the fact that the underlying events occurred in California, witnesses are located in California, Central National had been coordinating the insurers' defense obligations in California, and Continental is not a Texas company. With these connections to California, the Insureds contend that California is the more equitable forum.

Continental responds that its desire for a federal forum is not forum shopping. It explains that Texas is where the Insureds have their principal places of business, and where Continental issued nine out of the ten relevant insurance policies.

2

The court finds that the fairness considerations are either neutral or weigh slightly in favor of abstention. The Insureds neither argue nor provide evidence that Continental sued in anticipation of the filing of an action in California state court, which undercuts the argument that Continental acted unfairly. At the time Continental sought declaratory

judgment in this court, neither the Insureds nor Central National had filed suit in California. And although the underlying Cement Dust Cases were pending in California, it was not illogical for Continental to bring a declaratory judgment action in Texas concerning the interpretation of the insurance policies. Nine of the ten relevant policies were issued in Texas, and the Insureds have their principal places of business in Texas.

The Insureds maintain that Continental chose to sue in Texas to change what state's law would control. The parties do not adequately brief, and the court need not decide, whether the result of the different conflict of laws analyses changes the applicable substantive law for interpreting insurance policies.[11] It is unnecessary to decide which substantive law applies because, even without evidence of forum shopping, the remaining *Brillhart* considerations, considered *in toto*, favor abstention.

*   *   *

Having considered the issues of federalism, fairness, and efficiency, and guided by the *Trejo* factors, the court concludes that Central National's state-court suit presents the better forum for deciding the questions in controversy here. The court therefore grants the Insureds' motion to stay. *See Wilton*, 515 U.S. at 288 n.2 (noting that staying instead of dismissing federal action is often preferable "where the basis for declining to proceed is the

---

[11]For choice of law issues, Texas employs the "most significant relationship" test, while California uses a governmental interests and comparative impairment approach. *Compare Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735-36 (Tex. 1997) *with ABF Capital Corp. v. Grove Props. Co.*, 126 Cal. App. 4th 204, 215 (2005). The parties focus on the difference between Texas and California substantive law on interpreting insurance contracts, and fail to adequately brief the choice of law issue.

pendency of a state proceeding . . . because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy"). The court does not reach the motion to transfer venue. The clerk of court is directed to close this case for statistical purposes. A party may for cause move the court to reopen the case statistically.

**SO ORDERED**.

May 6, 2013.

SIDNEY A. FITZWATER
CHIEF JUDGE